**GALVESTON, H. & S. A. RY. CO. v. BREWER.** (No. 9047.)

Court of Civil Appeals of Texas. Galveston. Jan. 27, 1928.

Rehearing Denied March 29, 1928.

**1. Appeal and error ☞1043(7)—Error, if any, in refusing continuance because amended petition set up different cause of action held harmless, in view of evidence developed.**

In action for personal injury to railroad employee while loading stringers onto cars by means of a hoisting machine, error, if any, in refusal of defendant's application for continuance because amended petition filed on day of trial set up new and different cause of action on theory that by amendment plaintiff invoked the doctrine of res ipsa loquitur, became harmless, where, under evidence, immediate cause of accident was shown and hence there was no room for application of the res ipsa loquitur rule.

**2. Pleading ☞248(11)—Amended petition which amplified former allegations as to defective construction or maintenance of hoisting machine held not new cause of action.**

Where petition of railroad employee alleged he received injuries while engaged in loading stringers onto cars by means of a hoisting machine, amended petition, which only amplified allegations of prior pleadings as to control and management of machine and added thereto that action was such as ordinarily did not happen if those having management and control used proper and ordinary care, *held* not to set up a new and different cause of action.

**3. Pleading ☞248(2)—Generally, amended petition alleging same transaction does not state new cause of action notwithstanding amendment may be established by different proof.**

Generally, an amended petition asserting a cause of action between same parties and growing out of same transaction or occurrence as that alleged in original petition does not set up new cause of action, notwithstanding amendment may be established by different proof from that required to sustain original petition.

**4. Evidence ☞53—Presumptions or inferences cannot be indulged against proved facts.**

Presumptions or inferences cannot be indulged against proved facts, both giving way when facts appear.

**5. Continuance ☞31—Defendant could not claim surprise where showing of cause of fall of timber which injured employee was elicited on cross-examination of its witness.**

Where railroad employee was injured while loading stringers onto cars by means of a hoisting machine, defendant could not claim surprise in testimony showing cause of fall of timber, since it was elicited on cross-examination of one of its witnesses.

**6. Master and servant ☞265(2)—Doctrine of res ipsa loquitur is applicable as between master and servant.**

The doctrine of res ipsa loquitur can be applied as between master and servant.

**7. Master and servant ☞286(1)—Refusal to direct verdict for defendant because plaintiff failed to prove prima facie case held proper, where evidence raised issue of negligence.**

Where a railroad employee was injured while loading stringers onto cars by means of a hoisting machine, refusal to instruct jury to return verdict for defendant because plaintiff failed to prove prima facie case entitling him to recover was not error, where issue of negligent operation of the hoisting machine as the proximate cause of plaintiff's injury was for jury.

**8. Trial ☞420—Defendant introducing evidence after motion for instructed verdict was denied could not complain of refusal to instruct verdict on plaintiff's evidence.**

Where defendant, after its motion for instructed verdict was overruled, introduced testimony, and plaintiff by cross-examination of defendant's witnesses having elicited additional evidence on issue of negligence, defendant cannot complain of refusal to instruct verdict for it on evidence at time plaintiff rested.

**9. Trial ☞420—Question whether evidence authorizes recovery is determined from entire evidence, where defendant introduced evidence after denial of its motion for verdict.**

Defendant being permitted after its motion for instructed verdict is overruled to introduce evidence sustaining its defense, question of

whether evidence raises issue of plaintiff's right to recover must be determined from evidence as a whole, and not confined to evidence offered by plaintiff before resting.

**10. Master and servant ⊜286(18)—Whether railroad was negligent in not having chains more securely fastened to grappling hook on crane held under evidence for jury.**

Where railroad employee was injured while loading stringers onto cars by means of a hoisting machine, whether railroad was negligent in not having chains attached to grappling hooks more securely fastened to hook at end of crane or pulley chain being under evidence for jury, refusal to instruct verdict in its favor was not error.

**11. Trial ⊜350(6)—Refusal to submit issue of assumed risk held not error, where injured employee was not engaged in interstate commerce.**

Where railroad employee was injured while loading stringers onto cars by means of a hoisting machine, refusal to submit issue of assumed risk was not error, where evidence did not show that plaintiff was loading timbers which were to be immediately used to repair a bridge over which interstate commerce was being transported by railroad.

**12. Commerce ⊜27(8)—Employee was not engaged in "interstate commerce" because of loading timber which might in future go into bridge over which interstate commerce would be transported.**

Railroad employee was not engaged in "interstate commerce," so as to have assumed risk of injury from loading timber on cars, because timbers would in future be used for construction or repairs of a railroad bridge over which interstate commerce would eventually be transported.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

**13. Appeal and error ⊜1062(2)—Refusal of railroad's request to submit specific question of plaintiff's negligence in placing hooks too near end of timber held harmless.**

Where railroad employee was injured while loading stringers onto cars by means of a hoisting machine, and only issue of contributory negligence under evidence was submitted under charge as to plaintiff's contributory negligence in fastening hooks in timber, refusal of defendant's request to submit specific question whether plaintiff was negligent in placing hooks too near end of timber was harmless.

**14. Appeal and error ⊜688(2)—Question whether counsel's remarks were harmful need not be considered, where bill does not state what objections were made.**

Where plaintiff's counsel, before ruling on objection to question was made, stated he was going to withdraw question because it was a matter of common knowledge, alleged error therein need not be considered, where bill of exceptions does not state what objections to remarks were made by defendant.

**15. Trial ⊜133(6)—Counsel's statement in withdrawing question that it was matter of common knowledge held not so prejudicial as to cause jury to disregard instruction not to consider.**

Where, in personal injury action, defendant's witness testified that equipment used by railroad was scientifically and correctly built, and plaintiff's counsel asked him whether in face of that they did not have injuries from all their devices, withdrawal of question, before ruling of objection thereon, with statement that that was matter of common knowledge, held not calculated to arouse passion or prejudice of jury so as to cause them to disregard instruction not to consider.

**16. Damages ⊜132(3)—$12,500 for injuries to spine of man of 65 years, incapacitating him from working on his feet, held not result of passion and prejudice.**

$12,500 damages to man of 65 years of age having life expectancy of 11 years, previously earning from $72 to $100 per month and doing additional work at home, held not result of passion and prejudice, where he sustained serious and painful back injury and at time of trial, a year and a half after injury, he was unable to do any work on his feet, but could only use his arms and do such work as he could perform while sitting.

Appeal from District Court, Lavaca County; Lester Holt, Judge.

Action by J. S. Brewer against the Galveston, Harrisburg & San Antonio Railway Company. From a judgment for the plaintiff, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Marcus Schwartz and W. T. Bagby, both of Hallettsville, for appellant.

Henry S. Paulus, of Yoakum, and Fly & Ragsdale, of Victoria, for appellee.

PLEASANTS, C. J. This suit was brought by appellee to recover of appellant the sum of $25,000 damages for personal injuries alleged to have been caused by the negligence of appellant.

Plaintiff's petition alleges, in substance, that he received the injuries of which he complains while engaged with other employees of appellant in its yards at Yoakum, Tex., in loading heavy timbers, called "stringers," upon one of appellant's cars; that the timbers were loaded on the car "by means of a hoisting machine which consisted of a power appliance, a crane, pulleys and chains, or cables and hooks; that appellee was required to fasten the hooks used in hoisting the timbers, in one end of the timber to be hoisted, and another employee of the appellant was required to fasten the hook in the other end, and that after said hooks were securely fastened that fact would be communicated to another of appellant's employees, who put into operation the motive power that was required to hoist and lift the timber from the

groun1 to the car, and the stringer would then be pulled in position on the car, after which the grappling hooks would be released, and this process of loading continued until the work had been completed; that appellee fastened the grappling hook used by him securely in one of the pieces of timber desired to be loaded, and his coemployee also fastened the grappling hook used by him in another part of the timber, and the necessary signal was given to hoist the timber; that while said timber was being so hoisted, the chain or cable appliance, or some connection used therewith for said hoisting, broke or became disconnected, and as a result said timr ber, or one end thereof, fell to the ground, and in so falling struck appellee in the back, which caused him to suffer great pain and permanently injured him; that his injuries are permanent and that he is wholly incapacitated from performing any remunerative labors and from earning any money as a laborer; that as a result of said injuries he has become nervous, is unable to sleep at night, and cannot put on his own shoes and lace them up, and generally is unable to perform the ordinary duties of dressing and undressing himself."

The negligence pleaded as the cause of plaintiff's injury will be hereinafter shown.

Appellant (defendant) answered by general demurrer, by special exception to that part of paragraph 9 of appellee's petition wherein he attempted to base a recovery upon the value of his labor in and about his own home, by a general denial, and by special denial, especially denying that the hoisting machine, chains, hooks, and other parts belonging thereto and used on the occasion in question were defective in any respect or insufficient to lift the timbers which were being loaded, and alleging that said machine was in perfect condition and was scientifically constructed and built, and that it was the same kind of machine that is generally in use by railroads and other companies where heavy timbers are to be moved and lifted from one position to another; and also especially denying negligence in the operation of said machine and charging contributory negligence on the part of appellee in placing the grappling or timber hooks fastened by him in an improper place, thereby causing the stringer or timber to fall, and in failing to place himself in a safe position and place after said hooks were fastened and while the hoisting machine was being operated. Appellant also pleaded that at the time of said injury it was engaged in interstate commerce and appellee assumed the risk incident to said work.

The trial in the court below resulted in a verdict and judgment in favor of appellee in the sum of $12,500.

[1] Appellant first complains of the ruling of the trial court refusing its application for a continuance. This application was based upon the ground that by the amended pleading filed by plaintiff on the day the case was called for trial he had set up a new and different cause of action from that theretofore pleaded by him, and defendant not having any notice of plaintiff's change of his cause of action was not prepared to meet it with evidence then at its command, but by continuance of the cause could procure such evidence.

[2] Conceding that the application contains all of the statutory requisites of a first application for continuance, the court did not err in refusing it, because the facts stated therein are not supported by the record, in that the amended petition on which the case was tried did not set up a new and different cause of action from that theretofore pleaded by the plaintiff. The negligence upon which the cause of action is based is thus pleaded in the amended petition upon which the case was tried:

"(a) That said injuries were brought about to him as a direct and proximate cause of the defendant's negligence in failing to furnish him safe and suitable material and instruments and means of labor in discharging his duties to this defendant in loading said material, in this, that the hooks, chain, or cable to which the grappling hook was fastened were insufficient and unsafe in all their parts to meet the requirements of lifting said timbers, and by reason of their insufficiency the same in the manner of their use became disconnected or broken, as hereinbefore alleged, or else the same was insufficient in that the same would not remain securely fastened in all their parts and the same became loose and permitted the timber, to which the grappling hook had been fastened, to fall.

"(b) That the said hoisting machine in its entirety and in the various parts thereof, which included each and everything necessary to complete and equip a proper hoisting machine and the maintenance thereof to be used in hoisting materials and timbers from the ground to cars upon which same were to be loaded, was on said 31st day of October, A. D. 1925, under the exclusive control and management of the defendant or its agents and employees other than this plaintiff, and the accident and injury to said plaintiff, so occasioned as aforesaid, was such as in the ordinary course of things does not happen if those who have the management and control use proper or ordinary care, and this plaintiff's injuries so occasioned and suffered, as aforesaid, by reason of the falling of said timber, was proximately caused by the negligence of the defendant or its agents, and employees acting for it within the scope of their authority or employment in that behalf, due to the want of ordinary care in the construction of said hoisting device or in the maintenance thereof, whereby it was on account of the negligence of the defendant, or imputable to it, either improperly constructed or else insufficiently and improperly maintained, but the particular or particulars of which negligence are unknown to this plaintiff, and he cannot here more definitely or with greater certainty specify same,

and that but for such negligence such injury to this plaintiff would not have occurred.

"Plaintiff shows to the court that if he be in error as to the allegations contained in the next preceding paragraph of this petition as set out in subdivisions (a) and (b) thereof, as to devices and tools and appliances or their maintenance so furnished him by defendant with which to perform his duties to this defendant, then he says and charges in the alternative the facts to be that the defendant, its agents, servants, and employees, other than this plaintiff, on said day so negligently operated said hoisting apparatus in hoisting or lifting the heavy timbers from the ground that the grappling hooks or some other part of said device became loosened and permitted said timber to fall and strike this plaintiff and injure him as aforesaid, while he was in the exercise of, due care for his own safety and without fault on his part. That the said hoisting crane and all of its parts so used in hoisting said timbers on said occasion by the defendant, including its operation, handling, and equipment, was under the exclusive management and control of the defendant, its employees and agents, other than this plaintiff, and the accident to this plaintiff, the said J. S. Brewer, so occasioned, as aforesaid, was such as in the ordinary course of things does not happen if those who have the management and control, and use and operation of said device, use proper or ordinary care in such handling, and this plaintiff's injuries so suffered on account of said falling timber were proximately caused by the negligence of the defendant or its agents or employees acting for it within the scope of their employment in that behalf, due to the want of ordinary care either in the operation or handling of said equipment or in the equipment of said device itself, whereby it was, on account of the negligence of the defendant, or imputable to it, either improperly operated or handled negligently, or else insufficiently equipped, but the particular or particulars of which are unknown to plaintiff, and he cannot here more definitely or with greater. certainty specify same, and but for such negligence such injuries would not have occurred."

The allegations of negligence in the superseded pleading are as follows:

"That said injuries were brought about to him as a direct and proximate cause of the defendant's negligence in failing to furnish him safe and suitable material and instruments and means of labor in discharging his duties to this defendant in loading said material, in this, that the hooks, chain, or cable to which the grappling hook was fastened were insufficient and unsafe in all their parts to meet the requirements of lifting said timbers, and by reason of their insufficiency the same in the manner of their use became disconnected or broken, as hereinbefore alleged, or else the same was insufficient, in that the same would not remain securely fastened in all their parts and the same became loose and permitted the timber, to which the grappling hook had been fastened, to fall.

"Plaintiff shows to the court that if he be in error as to the allegations contained in the next preceding paragraph of this petition as to defects of tools and appliances so furnished him by defendant, with which to perform his duties to this defendant, then he says and charges, in the alternative, the facts to be that the defendant, its agents, servants, and employees other than this plaintiff, on said date so negligently operated said hoisting apparatus in hoisting or lifting the heavy timbers from the ground that the grappling hooks or some part of said device became loosened and permitted said timber to fall and strike this plaintiff and injure him, as aforesaid, while he was in the exercise of due care for his own safety and without fault on his part. That the specific act or acts of negligence of the defendant, its agents, servants, and employees, so causing his injuries, are unknown to this plaintiff, nor can he reasonably charge of what same consisted."

We cannot agree with appellant's contention that the amended petition set up a new and different cause of action.

The amendment was filed to meet exceptions of defendant to the prior pleading on the ground that its allegations were too general in the statement of the grounds of negligence relied upon to show appellant's liability for the injury. The only difference in the two pleadings is to be found in paragraph (b) of the amended petition before set out. This paragraph merely amplifies the allegations of the prior pleading as to the control and management of the hoisting machine, and adds the allegation that the accident was such "as in the ordinary course of things does not happen if those who have the management and control use proper and ordinary care," and further amplifies the former allegations as to the defective construction or maintenance of the machine. Both pleadings allege that the specific act or acts of negligence which caused the injury were unknown to the plaintiff.

Appellant's claim that the amendment set up a new cause of action is predicated upon the theory that by the amendment plaintiff invoked the doctrine, "Res ipsa loquitur," and that such doctrine could not have been applied upon the allegations of the former pleading.

We are not prepared to, hold that the doctrine could not have been invoked under the superseded pleading if the evidence had failed to show the specific cause of the fall of the timber. But if appellant's contention, that the rule could not have been applied under the pleadings amended, is sound, the cause of action pleaded in the amendment would not be a new one, though a smaller quantum of proof would be required of plaintiff in establishing his allegations of negligence. It may be that such a change in a petition would so surprise a defendant as to entitle him to a continuance of the case. This question, however, has been eliminated from the case by the evidence adduced upon the trial.

The undisputed evidence shows that in hoisting the stringer, the ring to which the chains attached to the grappling hooks used by appellee were fastened slipped off of the

large hook on the end of the pulley chain and this caused the timber to fall. The immediate cause of the accident being thus shown, there was no room for the application of the res ipsa loquitur rule; the only issues for the jury (aside from that of contributory negligence) being whether appellant was negligent in using this method of fastening the grappling hook chains to the pulley chain, and whether such negligence was the proximate cause of the injury.

[3] The authorities are numerous and uniform in support of the general rule that an amended petition asserting a cause of action between the same parties and growing out of the same transaction or occurrence as that alleged in the original petition does not set up a new cause of action, notwithstanding the amendment may be established by different proof from that required to sustain the original petition. Mexican Cent. Ry. Co. v. Mitten, 13 Tex. Civ. App. 653, 36 S. W. 285; Landa v. Obert, 78 Tex. 33, 14 S. W. 297; Cotter, Truelove & Co. v. Parks, 80 Tex. 539, 16 S. W. 307; Commonwealth Ins. Co. v. Bryant (Tex. Civ. App.) 185 S. W. 979; St. Louis Southwestern Railway Co. v. Cambron, 62 Tex. Civ. App. 465, 131 S. W. 1130.

[4] But, as we have before said, this question becomes immaterial in view of the undisputed evidence showing the immediate cause of the accident. Presumptions or inferences cannot be indulged against proven facts; both give way when facts appear. When the evidence disclosed that the ring to which the grappling hook chains were attached slipped off the large hook at the end of the pulley chain upon which it was placed, and this caused the timber to fall, no inference of any other cause for the injury was presumable and the rule res ipsa loquitur could have no application.

[5] The testimony showing the cause of the fall of the timber was elicited on cross-examination of one of appellant's witnesses, and appellant was in no position to claim surprise by the testimony and has made no such claim.

If there was prima facie error in refusing the application for continuance, such error became manifestly harmless as the case was developed by the evidence.

Upon the trial plaintiff rested his case after introducing the following evidence: Plaintiff testified, in substance, that he was injured on October 31, 1925, while engaged in the duties of his employment loading heavy bridge timbers, called stringers, upon a car of defendant in its yards at Yoakum, Tex. These pieces of timber each weighed about 800 pounds. The method of loading required two men to place grappling hooks at each end of the timber to be lifted on the car by hoisting machine, operated by a third employee of the defendant. After the grappling hooks were fastened to each end of the timber, the hoisting machine put in operation, and the timber lifted 9 or 10 feet from the ground, the end upon which plaintiff had placed the grappling hooks fell to the ground, struck plaintiff, and severely injured him. He further testified:

"Now, this hoisting apparatus, if you want me to just explain what kind of a thing it is: It is a thing they load heavy timbers with, an arm that reaches 'way out and grabs a piece of something heavy that way and loads it on a car, or puts it wherever you want it. After you have lifted the piece of timber from the ground, the man who handles the hoister is able to shift it around. On this particular day this hoister was located right behind the storeroom, on the edge of the lumber yard—right out in the lumber yard. I don't know that the machine was fastened to anything. The hooks were hooked onto this timber. The machine was setting on the ground. There is a crane used in connection with this. That crane reaches away out and gets anything, and there is a chain coming up there with hooks on it, and those hooks come on down and were fastened on to the timber. My duty was to fasten those hooks that I spoke of as coming down—fasten them to the timber. On that occasion me and another man were employed fastening those hooks into the timber. As to where I was to fasten mine, and where he was to fasten his: He was on the back end, and I was on the front; but I hooked on first, and he hooked on back on the back end. After I had hooked my hooks and he had hooked his hooks, then it became necessary, in order to lift this timber from the ground to the car, for the man that was running the hoister to take care of it. * * *

"I hooked on to it, and he gave it a jerk up. As to how I fastened those hooks: I fastened —hooked it on to the timber just the same as I did the others. * * * I fastened those hooks by hooking them into the timber. I stuck them into the timber. That was the proper way; that's the customary way, and that's the way I had been hooking them. I did not have anything to do with the hoisting apparatus. It was the duty of Mr. Tom Rollin to look after the hoisting of the timber after we had hooked or fastened the hooks on to it. Mr. Tom Rollin is the man that was working out there with me. He was working for the company. I did not have any authority over this man. * * * I don't know what caused those grappling hooks or fastenings to turn loose; they came loose up above. I don't know what caused them to come loose, unless it was the jerking of the timber, and it had slipped over and slipped out of that hook up above. I saw it jerking when I stepped back out of the way.

"Now, after having fastened these hooks, as I fastened them on that occasion, had the machine itself been all right, in good condition, and had they operated it as they should have operated it, I do not think that that timber would have fallen; there had been too many loaded with that. If properly handled, I don't think it would have fallen. It couldn't have done that if it was properly handled."

Cross-examination:

"I hooked or attached my grappling hooks to the stringers first. I did not see when Tate

attached his grappling hook; I didn't notice how he hooked it, but I saw him pick it up. I saw him when he was coming over to attach it. Then I stepped out of the way. Then we made the demand that it be lifted up by the operation of this hoisting machine, with the use of the crane; and when about 9 feet or 10 feet, as I estimate it, it slipped off the hook —came down from the hook, and fell toward me."

Plaintiff next introduced paragraph 4 of defendant's first amended original answer, which is as follows:

"4. Further answering herein, defendant especially denies that the said hoisting machine, together with chains, hooks, and other parts belonging thereto and used by plaintiff on the date when, he alleged, he was injured, was defective in any respect or insufficient to lift the timbers which were being loaded at that time, but it says that said machine, together with all its parts used at said time, was in perfect condition; that it was scientifically constructed and built and was the same kind of machine that is generally in use by railroads and other companies where heavy timbers are to be moved and lifted from one position to another."

[6] The defendant then moved the court to instruct the jury to return a verdict in its favor "because plaintiff has failed to prove a prima facie case under the facts and law, entitling him to recover herein."

Appellant's second proposition assails the ruling of the court refusing this motion, on the ground that the doctrine of res ipsa loquitur does not apply as between master and servant, and plaintiff has introduced no evidence sufficient to raise an issue of negligence on the part of the defendant, as alleged in the petition. This proposition cannot be sustained. Under the rule of decision in this state, the doctrine res ipsa loquitur can be applied as between master and servant. In the case of McCray v. Ry. Co., 89 Tex. 168, 34 S. W. 95, Judge Brown, speaking for our Supreme Court, after discussing and defining the res ipsa loquitur rule, answers the contention that it is only applicable as between a carrier and passenger with the following quotation from the case of Rose v. Stephens & Condit. Transp. Co. (C. C. A.) 11 F. 438, 20 Blatchf. C. C. 411:

"* * * Undoubtedly the presumption has been more frequently applied in cases against carriers of passengers than any other cases of negligence, but there is no foundation in authority or in reason for any such limitation of the rule of evidence, as the presumption originates from the nature of the act, not from the relations between the parties. It is indulged as a legitimate inference whenever the occurrence is such as, in the ordinary course of things, does not take place when proper care is exercised, and is one for which the defendant is responsible."

[7] But aside from the application of the rule mentioned, we cannot hold that plaintiff's testimony did not raise the issue of neg-

ligent operation of the hoisting machine as the proximate cause of his injury.

[8] If, however, the state of the evidence at the time the plaintiff rested his case was such as to entitle the defendant to an instructed verdict, the defendant after the motion was overruled having introduced its testimony, and plaintiff by cross-examination of defendant's witness having elicited additional evidence upon the issue of defendant's negligence, the defendant is no position to complain of the refusal of the court to instruct a verdict in its favor upon the evidence as it existed at the time plaintiff rested his case. Under the common-law rule, when a defendant demurred to plaintiff's evidence and his demurrer was overruled, he could not then introduce any evidence and his defense would stand or fall upon the evidence to which the demurrer was addressed.

[9] But our decisions have not applied this rule to a motion by a defendant to instruct a verdict upon the evidence, though such motion is in effect a general demurrer to the evidence. The defendant being permitted, after his motion for an instructed verdict is overruled, to introduce evidence sustaining his defense, the question of whether the evidence raises the issue of plaintiff's right to to recover must be determined from the evidence as a whole, and not confined to the evidence offered by the plaintiff before resting his case. The defendant, not having been willing to rest its case on the evidence as it existed at the time plaintiff rested, cannot demand that the plaintiff's case be rested upon that evidence only.

[10] This brings us to a consideration of appellant's proposition that the court erred in refusing to instruct a verdict in its favor after all the evidence had been introduced.

In addition to the testimony before set out, Mr. Rollin, defendant's employee who operated the hoisting machine, and a witness for defendant, after testifying that the timber which fell and struck plaintiff fell because the ring to which the chains were attached to the grappling hooks placed on the timber by plaintiff were fastened, slipped off the large hook at the end of the crane or pulley chain upon which it hung, testified on cross-examination:

"Those two chains that led down from the hook at the end of the crane to the timber to be lifted were separate and independent from each other. They were not connected together in any wise.

"It is a fact that if those two chains had been connected together at the top by a ring, fastened together, and that ring had been fastened over the hook, it would have been impossible for this accident to have occurred. The chain fastened to the timber by Mr. Brewer could not have slipped off."

Recross-examination:

"Now, if there had been a lock placed over the top of this hook over which the two ends

of the grappling hook chains were placed, they could not possibly have slipped off; not if they were locked on.

"I don't know of anything to prevent such an appliance—one that is fastened—from being made. I have never seen one. There are such things made, but in all of the hoisting machines and cranes I've seen, I never saw one in use like that anywhere. I was in the navy a little better than two years, since the war, and never saw any of them in the United States Navy made that way. I never saw a locked hook."

J. P. King, another witness for defendant, testified:

"About those chains that run down from the large hook, and are attached to the grappling hook, to which the grappling hook is fastened, they are separate. It is not a fact that they are joined together by one large center ring, to which they are both fastened. I am certain of that."

We cannot agree with appellant that this evidence does not raise the issue of negligence on its part in not having the chains attached to the grappling hooks more securely fastened to the large hook at the end of the crane or pulley chain. The evidence introduced by appellant to the effect that the hoisting machine and the apparatus connected therewith was scientifically constructed and the kind in general use for the purpose of hoisting heavy timbers and other materials was not conclusive upon the issue of whether ordinary care required the appellant to have the chains to which the grappling hooks were attached more securely fastened to the hook on the end of the crane. The evidence shows that such security could have easily been obtained by the simple substitution of one ring for the two separate rings to which the chains attached to the grappling hooks were fastened, or by placing an automatic snap or lock over the opening of the large hook on which the rings at the end of the chains on the grappling hooks were hung. That either of these simple changes would greatly protect appellant's employees engaged in the operation of the hoisting machine from the danger of injury from falling timbers, or other materials which they were using the machine to hoist, is obvious. Upon this evidence we think the jury were authorized to find, as they did, that appellant "failed to furnish plaintiff reasonably safe appliances with which to perform the labor he was engaged in at the time of his injury," and that "such failure on the part of the defendant was the proximate cause of the injury to plaintiff."

[11] We cannot sustain appellant's contention that the court erred in refusing to submit the issue of assumed risk.

[12] Unless the evidence is sufficient to sustain the finding that the plaintiff at the time of his injury was engaged in the furtherance of interstate commerce or in work so clearly related thereto as to be practically a part of interstate commerce, appellant was not entitled to have the issue of assumed risk submitted as requested by it. We think the evidence fails to show that plaintiff was so engaged at the time of his injury. The evidence shows that appellant is an interstate carrier, but no reasonable inference can be drawn from the evidence that the timbers which appellee was engaged in loading were being shipped for the purpose of constructing or repairing a bridge over which interstate commerce was being transported by appellant. The only evidence of the use to which the timbers were to be put is as follows:

"There were some timbers being prepared and placed for shipment by the company on that date. The timbers were a bunch of bridge stringers. Bridge stringers are timbers 7 by 16, 26 feet long, used in the repair and construction of bridges. These particular bridge stringers were being sent or shipped to Mr. Charley Snyder, bridge foreman of what is known as the Austin Division."

Assuming that the Austin Division referred to by the witness was an administrative division of appellant's railway, there is no evidence that any bridge on that division was being constructed or repaired, or that any bridge on any portion of appellant's railroad used for the transportation of interstate commerce was being constructed or repaired. The ever widening meaning given by the United States Supreme Court to the clause, "engaged in interstate commerce," as used in the federal statute invoked by appellant, has not yet been extended to include work upon or in transporting any material which an interstate carrier might thereafter use in constructing facilities for interstate transportation, and this court has no disposition to take the lead in further extending the scope of federal jurisdiction in questions of this character.

In each of the cases of Philadelphia, Baltimore & Washington Ry. Co. v. Smith, 250 U. S. 101, 39 S. Ct. 396, 63 L. Ed. 869; Pedersen v. Delaware, L. & W. Ry. Co., 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; Hargrove v. Ry. Co. (Tex. Civ. App.) 202 S. W. 188; Southern Ry. Co. v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69; Texas & N. O. Ry. Co. v. Gericke (Tex. Civ. App.) 214 S. W. 668, cited by appellant, the plaintiff at the time of his injury was engaged in work on or in aid of work on some instrumentality used by the defendant in the interstate transportation of commerce. In the Pedersen Case, supra, the court is careful to confine its holding to work upon instrumentalities of interstate commerce after their use as such has begun. We do not think any of these cases require or authorize the holding that one engaged in work upon any material which an interstate carrier may at some time use in construction or repair of its facil-

ities for the transportation of interstate commerce should be regarded as engaged in interstate commerce, and this is all that can be inferred from the evidence in this case.

[13] The issue of contributory negligence raised by the evidence was submitted by the court as follows:

"Do you find from the evidence that plaintiff was guilty of contributory negligence, as the matter has been hereinbefore explained to you, in fastening the grappling or timber hooks in the timber being lifted at the time of the injury, if any?"

The only issue of contrbiutory negligence raised by the evidence is based upon the testimony of two of appellant's witnesses to the effect that appellee attached his grappling hook too near to the end of the timber, and this caused that end of the timber to shoot up when the hoisting machine was put into operation and such dislocation of the timber's center of gravity caused the ring to which the grappling hooks placed on the timber by appellee were fastened to slip or pull off the large hook at the end of the crane, and precipitated that end of the timber to the ground. This was the only contributory negligence pleaded by appellant in regard to the fastening of the grappling hooks to the timber by appellee. We think the charge above quoted properly submitted the issue to the jury. The contributory negligence in regard to the placing of the grappling hooks by appellee charged in the pleading and the evidence being that he placed the hooks too close to the end of the timber, the jury could not have considered any other question of negligence of appellee in placing the grappling hooks, and the refusal of the trial court to grant appellant's request to submit the specific question of whether appellee was negligent in placing the hooks too near the end of the timber could not have possibly been harmful to appellant.

[14] Another complaint is based upon the following statement or remarks of one of appellee's attorneys made during the cross-examination of one of appellant's witnesses:

"While the witness F. L. Carson was on the stand testifying in behalf of the defendant, and had testified on direct examination that he was the superintendent of motive power for defendant company, and that he had personally bought the hoisting machine in question for defendant and that it was scientifically and correctly built when he bought it, J. W. Ragsdale, attorney for plaintiff, on cross-examination, propounded the following questions, to wit:

"Q. Now, all of the equipment that you have on the road that you purchased was scientifically and correctly built when you bought it, was it not? A. Yes, sir.

"Q. All right; in the face of this you have injuries following, do you not, from all these devices?

"All the above being objected to by attorneys for defendant, said J. W. Ragsdale, attorney for plaintiff, before a ruling was made by the court upon said objection, stated in the presence and hearing of the jury: 'I am going to withdraw it because it is a matter of common knowledge.' Attorneys for defendant then objected to said remarks, whereupon the court verbally instructed the jury not to consider said remarks. The defendant then and there excepted to said remarks of counsel, notwithstanding the fact that the court had verbally instructed the jury not to consider the same, and it here now tenders this its bill of exceptions No. 3 and asks that same be approved and ordered filed as a part of the record in this case, which is accordingly done."

[15] We are not informed by the bill of exceptions what objections to the remark were made by appellant, and for that reason the point is not presented so as to require our consideration. But if we concede, for the sake of argument, that the remark was improper in stating as a matter of common knowledge a fact not commonly known, the fact so stated was not calculated to so arouse the passion or prejudice of the jury as to cause them to disregard the instruction of the court not to consider the remark, as it is not a statement of fact pertinent to any issue in the case. It must be assumed that the instruction to the jury to disregard the remark was obeyed and that it had no effect on their verdict. San Antonio Traction Co. v. Parks (Tex. Civ. App.) 97 S. W. 510.

[16] We cannot say that the verdict of the jury awarding appellee $12,500 is so excessive as to justify the conclusion that it was the result of passion, prejudice, or other improper motive. The evidence shows that appellee was 65 years old and had a life expectancy of 11 years, that he was earning prior to his injury from $72 to $100 per month, and in addition to his work for appellant he performed services at his home, working a garden, milking his cows, and feeding his hogs, etc. He was seriously and painfully injured in his back, and up to the time of the trial, more than a year after his injury, he was unable to do any work on his feet, but only use his arms and do such work as he could perform sitting down. He has suffered, and continues to suffer, pain from his injuries. The physicians who testified in the case disagreed as usual on the question of the extent and duration of appellee's injury; but there is testimony from which the jury might find that his injury was permanent.

Upon this state of the evidence, we cannot say that the verdict is so excessive as to authorize this court to disturb the finding of the jury upon that issue.

We are of opinion that the judgment should be affirmed, and it has been so ordered.

Affirmed.