## In re FINKELSTEIN'S ESTATE.
### No. 4028.

Court of Civil Appeals of Texas. Amarillo.
June 7, 1933.

Gaines, Gaines & Roberts, of San Antonio, for appellants.

Terrell, Davis, Hall & Clemens and C. K. Quin, all of San Antonio, for appellee.

MARTIN, Justice.

By a will shown to have been duly executed and properly witnessed, Abe Finkelstein bequeathed all his estate to his wife. He died about two months after making this will, subsequent to which application was made for the probate of same and for letters testamentary by the executor named therein. Two brothers of the testator filed a contest, alleging, in substance and effect, as grounds therefor, a lack of testamentary capacity by said testator to make a valid will. An order was entered by the county court of Bexar county duly probating this will, from which an appeal was taken to the district court of said county. Trial was had before the last-mentioned court, who, after hearing the evidence, found that testator, Abe Finkelstein, possessed testamentary capacity at the time of executing the will in question and gave judgment admitting same to probate. From this an appeal was perfected, and the only question properly presented here for determination is the alleged insufficiency of the evidence to sustain the court's finding above mentioned.

■ No useful purpose would seem to be served by a recitation here of all the tedious details of the evidence pro and con upon the issue above. Some fifteen witnesses gave testimony for the proponent. Contestants produced four medical experts as witnesses, whose testimony fully support their contention. The issue of mental competency of testator was sharply contested and, in our opinion, the testimony is sufficient, under the rules which govern us, to support either a negative or an affirmative finding upon the issue of mental competency. Testamentary capacity means such capacity on the part of a testator "as to enable him to know his estate, the extent and value, his children and heirs at law, and their natural claims on his bounty, and to take a rational survey of his estate and dispose of the same according to a fixed purpose of his own." Oberdorfer v. Newberger (Ky.) 67 S. W. 267, 268. See, also, Trezevant v. Rains (Tex. Sup.) 19 S. W. 567, 569.

■ The burden was upon proponent to establish the validity of the will under the facts here, but this we think was discharged by evidence from social intimates of the testator and from business associates. All this testimony, under the above definition, abundantly sustains the trial court's finding, unless the following novel proposition, copied from appellants' brief, correctly states the law: "Where the testimony of admittedly qualified experts, based upon treatment, observation and professional study of a patient, shows conclusively that he is mentally incapacitated to understand the effects of a written document purporting to dispose of his

property, even though non-experts are of a different opinion, the trial court should treat the expert testimony as conclusive of issue, and accordingly render judgment denying the will to probate."

A judicial sanction of the correctness of this statement would, it seems to us, compel the acceptance at its face value of the opinion of a qualified medical expert in matters of this kind, when based upon personal observation and treatment, and this regardless of the credibility of such witness. It has been said: "But a physician's opinion regarding mental capacity generally, or the mental capacity necessary to make a will, is, in the eye of the law, no better than that of any other person." White v. Bailey, 10 Mich. 159. See, also, Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 628, 36 L. R. A. 64, by the Supreme Court of Texas, which quotes the above, and Jones on Evidence (2d Ed.) § 391. Again, it is said: "While it is true that the jury are not bound to accept the opinion of experts and are not concluded by them, yet such opinions are entitled to be considered and to receive such weight as in view of all the circumstances reasonably belongs to them. In considering the weight and force of the evidence the jury may act upon their own general knowledge of the subject of the inquiry." Jones on Evidence (2d Ed.) p. 493.

The science of medicine has made notable contributions to present-day civilization. It has traveled a long distance from the time when powdered owls' feathers and birds' nest soup were prescribed as an unfailing remedy for human ailments, but it is known to all intelligent men that perfection has not yet been reached. It is still a progressing science. That its learned followers may err in judgment, or even be lacking in veracity, is the statement of a truth too obvious to be denied. Unless the science itself and the personnel of its followers have reached a degree of perfection that approximates infallibility, certainly a court ought not to be compelled to accept their conclusions as against abundant testimony of an opposite character from credible sources. The testimony produced from medical experts by contestants herein appears to come from men of good character, competent to form and express opinions concerning the subject-matter to which it relates. The law, however, recognizes the right of a nonexpert to give testimony in these matters and we find an abundance of such in this record. The trial judge saw fit to accept the latter and reject the former. This right and discretion clearly belongs to him under the law, and we are without authority to disturb his findings.

The judgment is affirmed.