### GOLAZ v. GOLAZ et al.
#### No. 13059.

Court of Civil Appeals of Texas. Fort Worth.

Nov. 9, 1934.

J. V. Patterson and H. E. Lobdell, both of Decatur, for appellant.

Davenport & Brown and Burch & Woodruff, all of Decatur, for appellees.

POWER, Justice.

On the 21st day of October, 1930, Mrs. J. H. Golaz executed, duly witnessed, what purported to be her last will and testament, and again on the 12th day of October, 1932, Mrs. Zipporia Golaz executed, duly witnessed, what purported to be her last will and testament. Mrs. J. H. Golaz and Mrs. Zipporia Golaz are one and the same person. Each of these wills was offered for probate in the county court, and the county court refused to probate either of them. All parties appealed to the district court. The cases were consolidated and presented to a jury.

The controlling issue in the case was whether or not Mrs. Golaz was of sound mind at the time she executed the last will. It was shown without controversy that she was of sound mind at the time she executed the first will. During most of her lifetime, she lived in Wise county, Tex., and many neighbors and friends testified on this issue; some testifying that she was of sound mind and others testifying that she was of unsound mind. This evidence, however, of her Wise county neighbors and friends was concerning the condition of her mind up to about 3 months prior to the date of the execution of the second will. A number of witnesses testified directly that she was of sound mind at the time she executed the last will. Dr. K. L. Buchner testified that he operated on Mrs. Golaz' foot and treated her for some 6 or 8 weeks. This operation took place in 1929. She had diabetes, and had some dead toes as a result of that disease. At the time of her entrance in the hospital, her mental condition was not good, due to her toes, the diabetes, the increase of blood sugar, and acidosis. After she left the hospital, she had regained her mind and was of sound mind. Diabetes is a progressive disease. There is no known cure for it. Gangrenous extremities are typical of diabetes in old people, and she was old. In the last stages of diabetes, they have nausea if they have acidosis, also high blood pressure. In cases of diabetes, the mind of a person can change from soundness to unsoundness rather rapidly. Under proper treatment, her mind could improve wonderfully in 5 or 6 weeks, and on the other hand it could be impaired by neglect; and without proper treatment she might become of unsound mind at any time.

Dr. L. H. Reeves testified that there was no cure for diabetes; that a great many old people who have diabetes die of complication of diabetes rather than diabetes itself. He testified further as follows: "From the symptoms you state of Mrs. Golaz leaving the hospital in 1929 from an operation on a gangrenous foot, and following it with headaches, head noises, vomiting, with nausea, would lead me to think that was caused from a complicated trouble and was due directly to a diabetic condition. Most people who have diabetes at the age of 67, which this party was, do have complications, and if she took influenza and died and went into coma preceding death, certainly I would not think she was as mentally alert because those conditions affect both the mental and physical strength of the person. I do not know this patient, but if she had all those symptoms you have enumerated and died in a coma, I would not believe her mind was normal the 12th of October, about thirty days before death. This is a hypothetical question."

L. W. Clark, who signed the second will as a witness on October 12, 1932, testified that Mrs. Golaz was of sound mind on that date. However, he testified further that a few days later he noticed her pulse was beating badly; that he advised her to take strychnine, and advised her to get a doctor.

Another witness who saw Mrs. Golaz in October, 1932, at and about the time the second will was executed, testified that she had been ill for about 2 years prior to that date.

Laura Barnett testified that, when Mrs. Golaz lived in Wise county for a long time prior to the time she left there, which was about 3 months prior to the date of the execution of the second will, she visited in testator's home on an average of four times a week, that she was of unsound mind, and that "her condition got worse, all along slowly worse until she left out there in July, 1932."

After the admission of all the testimony, the court submitted to the jury in his special issues the following question and explanation, to wit:

"Issue No. 3: Did the deceased, Mrs. Zipporia Golaz, at the time she executed the instrument of writing bearing the date of Oc-

tober 12, 1932, have testamentary capacity, as that term is hereinafter defined in this charge? Answer yes or no.

"In connection with the foregoing issue No. 3, I give you the following instructions with reference to the words 'testamentary capacity' as herein used. The words 'testamentary capacity' as herein used, mean to make a valid will the testatrix must have testamentary capacity of the execution of the will and at the time must have sufficient mental ability to understand the business in which she is engaged, the effect of her act in the making of the will and the general nature and extent of her property. .She must also be able to know her next kin and the natural objects of her bounty. She must have memory sufficient to collect in her mind the elements of the business to be transacted and to hold them long enough to realize the relation they have one with another.

"You are charged that the John Golaz herein have the burden of proving by a preponderance of the testimony the negative of issue No. 3, and unless they discharge that burden, you will answer the same in the affirmative.

"You are the exclusive judges of the facts proved and of the credibility of the witness and of the weight to be given the testimony, but you are bound to receive the law from the court which is herein given you, and be governed thereby."

The jury answered "yes" to the issue submitted, and, based on this answer, judgment was entered sustaining the second will to the exclusion of the first.

█ The charge was error. John Golaz was not the proponent of the second will, dated October 12, 1932, but the proponent of the first will. The burden of proof of sanity of the testator is at all times on the proponent of the will. Moore v. Martin (Tex. Civ. App.) 273 S. W. 961; Harris v. Harris' Estate (Tex. Civ. App.) 276 S. W. 964. However, in this connection the proponent of a will need not prove testator's sanity to the satisfaction of the jury; preponderance of the evidence being sufficient. Reinhardt v. Nehring (Tex. Com. App.) 291 S. W. 873.

██ The appellee contends that, although the charge of the court placing the burden of proof on the wrong party may be error, yet it is harmless error, because there was insufficient evidence on the part of the proponents of the first will to show that the testator was of unsound mind at the date of the execution of the last will. The medical testimony indicates that the testator was suffering from diabetes; that the disease is progressive. The evidence shows that she died some 30 or 40 days after the execution of the second will, and the evidence submitted by appellant shows that she was of unsound mind some 3 months prior to the date of the execution of the second will. The evidence of Laura Barnett shows that her mind gradually grew worse for a long period of time prior to July, 1932. This history of the mental illness was in line with the medical testimony that the disease was incurable and progressive and that most people who have diabetes at her age have complications that affect both the physical and mental strength. Other evidence showed that she had been ill for 2 years immediately before signing the second will. While the evidence is not strong, the jury were the judges of the facts proved and the weight to be given to the testimony, and this court is unwilling to say that the jury would not have been warranted in finding by inference and deduction evidence of probative force to the effect that the testator was of unsound mind at the time of the execution of the second will. The question of burden of proof is important, the court erred in its application in this case, and we are unable to say under the facts proved that it was harmless.

This case is reversed and remanded for new trial.