**BREEDING v. NALER et al.**

No. 1950.

Court of Civil Appeals of Texas. Waco.

March 24, 1938.

Rehearing Denied Nov. 3, 1938.

Jno. B. McNamara and Alfred Herbelin, both of Waco, for appellant.

Bryan & Maxwell and Stansell Bryan, all of Waco, for appellees.

GALLAGHER, Chief Justice.

This is an appeal from a judgment of the district court refusing to probate an instrument purporting to be the last will and testament of J. H. Norton, deceased. Appellant, M. B. Breeding, was named as executor in said will. He presented the same to the county court for probate. Appellees, Mrs. Pearl J. Naler, a sister of the testator, her husband and certain children of a deceased brother, contested the same on the ground of want of testamentary capacity on the part of the testator on June 20, 1934, the date on which said purported will was executed. From an order of the county court admitting said will to probate appellees prosecuted an appeal to the district court. Trial was had in that court before a jury. The only issues submitted were whether said Norton possessed testamentary capacity at the time he executed said will, and whether he had since revoked the same. The jury answered the first issue in the negative and did not answer the second. The court entered judgment on the verdict refusing to probate said will.

## Opinion

Appellant presents a group of propositions in which he contends, in substance, that the finding of the jury that said Norton, at the time he executed said instrument for probate as his last will and testament, did not possess testamentary capacity, is not supported by the evidence and that such finding is clearly wrong, manifestly unjust and the result of bias, prejudice or other improper motive or influence. Norton, the deceased, was a little over sixty years of age at the time of his death. He had never been married. He had for many years been afflicted with a disease which frequently causes insanity and which did cause the specific physical condition which resulted in his death. The instrument offered for probate as his last will and testament was executed three or four months before his death. The attorney who prepared the same and the subscribing witnesses thereto testified that

890

they saw nothing in his condition at that time to indicate unsoundness of mind. Said will was the last of five or six such instruments executed within a period of about two years. Norton was industrious and frugal and had accumulated property of the estimated value of forty or fifty thousand dollars. He resided at McGregor in McLennan county for many years. He first engaged in the drug business, and when his store was destroyed by fire he became connected with an implement house. A number of years thereafter he became a traveling salesman for a wholesale hardware company and continued in such employment until shortly before his death. About the time he accepted such employment he made his headquarters in Waco and resided with a sister, Mrs. Naler, one of the contestants herein. He had a room in her home, furnished for his exclusive use, and there was testimony that his said sister cared for him with tender devotion. Not a great while before his death, he left her home and resided with another sister in Waco.

About forty witnesses testified at the trial in the district court. The great majority of such witnesses knew Norton well during his residence in McGregor, but their contacts with him in later years were more or, less casual. Many of such witnesses never saw anything in his speech or conduct to suggest that he was of unsound mind. Other witnesses, more closely associated with him, testified that material physical and mental impairment began nearly ten years before his death; that he became increasingly property conscious and would become unduly excited whenever his possessions were mentioned, and that he was worried because he thought someone was trying to get his property while he lived or after his death; that he said that his sister, Mrs. Naler, had tried to poison him and that her son, Arthur Naler, had purposely overturned an auto in which the two were riding, in an attempt to kill him. He attributed such actions on the part of his sister and nephew to a desire to get rid of him that they might inherit and enjoy his property. There was also testimony that he became suspicious of his life-long and closest friends and would warn each of them against the others, asserting that their professions of friendship for the party to whom he was talking were false and that they entertained enmity toward the party so addressed. There was testimony that he stated he had conveyed a certain piece of property by deed, which he had not in fact conveyed, and that after the execution of the instrument offered for probate as his last will and testament he stated that he had devised the bulk of his estate to a particular sister, which statement was not correct. He bequeathed to the contestant Pearl Naler, whom he asserted had tried to poison him, about one-fortieth or one-fiftieth part of his estate, and such bequest was subject to material restrictions. With the exception of a bequest of a like amount to certain nephews and nieces jointly, he left his entire estate to his other two sisters.

An extended recital of the testimony is impracticable and would be without precedential value. Several of appellees' non expert witnesses, after reciting the facts on which they based their conclusion, testified that Norton was of unsound mind. Expert witnesses, in response to hypothetical questions based on the testimony introduced and relied on by contestants, testified that he was of unsound mind. Some of such witnesses, in response to hypothetical questions based on the testimony introduced and relied on by appellant, testified that he was of sound mind.

 The burden was on appellant, both by the terms of the statute and the overwhelming weight of authority, to prove that Norton had testamentary capacity at the time he executed said instrument. R.S., Art. 3348; Beazley v. Denson, 40 Tex. 416, par. 2; Campbell v. Campbell, Tex.Civ.App., 215 S.W. 134, par. 16, writ refused; Sherwood v. Sherwood, Tex. Civ.App., 221 S.W. 658, par. 2, writ refused; In re Finkelstein's Estate, Tex. Civ.App., 61 S.W.2d 590, par. 2. In determining whether appellant effectively discharged such burden, it is our duty to reject all evidence favorable to appellant's contention and consider only the evidence sustaining the verdict rendered, if such verdict could, upon consideration of such evidence, have been reasonably reached by an unbiased jury. The weight of the testimony and the credibility of the witnesses were exclusively for the jury. Degenhardt v. Joplin, Tex.Civ.App., 239 S.W. 692, 694, par. 1, and authorities there cited; Henson v. Adkins, Tex.Civ.App., 290 S.W. 231, 232, par. 1, and authorities there cited; Golaz v. Golaz, Tex.Civ.App., 77 S. W.2d 879, par. 3; Williams & Chastain v. Laird, Tex.Civ.App., 32 S.W.2d 502, 505, par. 1, writ refused, and authorities there

·cited. We have reached the conclusion, after a careful perusal of the entire statement of. facts, that appellant's contentions ·should be overruled. See generally: R.S., Art. 3348, subdivision 1; Bradshaw v. Brown, Tex.Civ.App., 218 S.W. 1071; ·Chandler v. Weimers, Tex.Civ.App., 57 S. W.2d 585; Stone v. Grainger, Tex.Civ. App., 66 S.W.2d 484, 490, par. 3 et seq., .and authorities there cited; Lord v. Hatcher, Tex.Civ.App., 83 S.W.2d 758, pars. 1 to 3, inclusive.

█ Appellant presents a group of propositions in which he contends that the court erred in overruling his objections to the definition of testamentary capacity given by the court in connection with the ·submission·of the issue of whether Norton ·possessed such capacity at the time he executed said will. "Testamentary capacity" was defined by the court as follows: "You are charged in connection with the term 'testamentary capacity', that for a person to have testamentary capacity, as that term ·is used in the above issue, such person, at ·the time of the execution of the will, must have had sufficient mental ability to understand the business in which he was engaged, the effect in making the will and the nature and extent of his property; he must ·be able also to know his next of kin and ·the natural objects of his bounty and their claims upon him; he must have memory sufficient to collect in his mind the elements of the business to be transacted and to ·hold them long enough to perceive at least their obvious relation to each other and to be able to form a reasonable judgment as to them." Appellant objected to such definition because the court failed to ·tell the jury therein:

(a) That it was not necessary that the testator possess a high order of intelligence ·or an absolutely sound mind in all respects in order to have mental capacity sufficient ·to make a will;

(b) That mere intellectual weakness ·does not disqualify a person to make a will;

(c) That a person may be mentally unsound and yet have the capacity to dispose of his property;

(d) That a person may have an insane delusion but that said delusion will not affect his testamentary capacity unless it relates to the very matter of disposing of his property;

(e) That a will is valid if mental capacity exists at the time of the execution thereof, notwithstanding complete dementia of the testator before and after the execution;

(f) That a mere mistaken belief or unjust or erroneous conclusion is not an insane delusion if there is some foundation in fact or basis on which the mental operation of the testator may rest, even though the basis may be regarded by others as wholly insufficient, even though the testator may be in error in his reasoning;

(g) That undue or unnatural prejudice or aversion, if based on any kind of reason, is not an insane delusion; and

(h) That one may have a delusion which does not imply or show unsoundness of mind.

This case was submitted on special issues. The methods of submitting cases by a general charge and upon special issues are so widely divergent that a case must be submitted by one or the other method, and not in part by each. It is accordingly held to be error for the court to give a general charge on the law of the case where same is submitted upon special issues. Mayfield Company v. Pepper, 129 Tex. 307, 103 S. W.2d 737, 738, par. 1; 41 Tex.Jur. p. 1181, §§ 325, 326, and authorities cited in notes thereto. It is provided by statute that the court, in submitting special issues, shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues. R.S. Art. 2189. The court, in connection with the issues submitted in this case, gave a correct definition of testamentary capacity. Mills v. Kellahin, Tex.Civ.App., 91 S.W.2d 1097, 1099, par. 3. One element of such definition was that the testator must not only be able to know his next of kin and the natural objects of his bounty, but must also know their claims upon him. This latter phase of the definition bore directly on the question of whether the testator had sufficient mental ability to recognize the affection cherished for him by his next of kin, or part of them, or whether he was, as the result of wrongs purely imaginary, filled with unwarranted resentment against some of them. The definition under consideration differs in this respect from the definition discussed in Rodgers v. Fleming, Tex.Com.App., 3 S.W.2d 77, 78, bottom 2nd column. Consideration of appellant's objections to the court's definition of testamentary capacity discloses that compliance· with the suggestions thus made

would have constituted such an elaboration of the rules of law applicable to particular phases of the case as to fall within the condemnation of the many authorities holding that the giving of a general charge in a case submitted on special issues constitutes affirmative error. Mayfield Company v. Pepper, 129 Tex. 307, 103 S.W. 2d 737, 739, par. 2; Davis v. Clark, 129 Tex. 520, 105 S.W.2d 190, 191, pars. 1 and 2, and authorities there cited; Winters Mutual Aid Ass'n Circle No. 2 v. Reddin, Tex. Com.App., 49 S.W.2d 1095, 1097, par. 10, and authorities there cited; Vetter v. Nicholson, Tex.Civ.App., 106 S.W.2d 1064, 1065, pars. 5 and 6, and authorities there cited; Theobalt v. Wiemann, Tex.Civ.App., 104 S.W.2d 589, 591, par. 3, and authorities there cited; American Nat. Ins. Co. v. Massengale, Tex.Civ.App., 105 S.W.2d 373, 374, par. 4, and authorities there cited; Lamb v. Collins, Tex.Civ.App., 93 S.W. 2d 490, pars. 1 and 2, and authorities there cited; Missouri-K.-T. R. Co. v. Salsman, Tex.Civ.App., 58 S.W.2d 1026, par. 8; Saltmount Oil Corporation v. Imperial Crown Royalty Corporation, Tex.Civ.App., 98 S.W.2d 418, 420, pars. 1 and 2, and authorities cited. We are further of the opinion that some phases of appellant's suggested additions to the court's definition of said term would have rendered the same subject to complaint as being argumentative and on the weight of the evidence. Wiedner v. Katt, Tex.Civ.App., 279 S.W. 909, 910, pars. 1 and 2, and authorities there cited; Campbell v. Campbell, Tex. Civ.App., 215 S.W. 134, 139, pars. 10 to 12, inclusive, writ refused, and authorities there cited; Gray v. Allen, Tex.Civ.App., 243 S.W. 684, 686, pars. 1 to 5; Bradshaw v. Brown, Tex.Civ.App., 218 S.W. 1071, 1075, pars. 7 to 9, inclusive, and authorities cited. Appellant's said propositions are overruled.

Appellant presents a proposition in which he contends that certain statements made by counsel for contestants, in the presence of the jury, in a colloquy between counsel for the respective parties and the court, were so injurious as to require the reversal of the case notwithstanding the court's instruction to the jury to disregard the same. Appellant's witness Dr. Warren had testified on direct examination that he had attended Norton in his last illness and that Norton had not at any time during the period thereof said or done anything to indicate unsoundness of mind. Counsel for contestants asked the witness on cross examination whether Norton's nurse, or some member of the family, had not reported to him that Norton had conceived the idea that someone was robbing the house or preparing to do so, and that notwithstanding assurances that such was not the case, had demanded his trousers and put them on, with his money in the pockets thereof, and slept with them on. Counsel for appellant objected on the ground that there was no evidence with reference to the matter inquired about. Counsel for contestants then asserted that evidence to that effect was introduced at a former trial. Counsel for appellant reserved an exception to said statement and asserted that counsel for contestants knew that such testimony was not introduced at such trial. The court instructed the jury not to consider the statement of counsel for contestants, whereupon said counsel retorted: "You bring that nurse here and I think she will repeat what she did before; she did say it". Counsel for appellant again excepted, and the court instructed the jury not to consider any remarks of counsel about what had been testified to. Counsel for contestants then asked a hypothetical question to the same effect, and counsel for appellant again objected. The court inquired whether counsel for contestants expected to introduce evidence of such incident and counsel stated that he hoped to do so, whereupon the court sustained the objection. The court, in his charge, told the jury they must not discuss or mention any fact which had not been admitted in evidence during the trial.

The statements of counsel under consideration, while made in the presence of the jury, were not addressed to them, and there is nothing to indicate any purpose to influence them thereby. The remarks were apparently made by counsel for both sides in good faith. While the statement of contestants' counsel was improper, the reply of appellant's counsel thereto challenging the correctness thereof and the sincerity of counsel in making the same was also improper and evoked the retort of contestants' counsel in substance reiterating his original statement. The court, twice at the time and again in general terms in his charge to the jury, instructed them not to consider such statement. There was nothing in the entire colloquy reasonably calculated to excite sympathy or to arouse prejudice. Under such circumstances, an instruction to the jury to disregard an extraneous statement is generally held suffi-

cient to exclude any reasonable probability that injury resulted therefrom. Meyer Bros. Drug Co. v. Madden-Graham & Co., 45 Tex.Civ.App. 74, 99 S.W. 723, par. 7; W. C. Munn Co. v. Westfall, Tex.Civ.App., 197 S.W. 328, par. 8; Ware v. Jones, Tex. Com.App., 242 S.W. 1022, par. 4; Davis v. Hill, Tex.Com.App., 298 S.W. 526, par. 4; Bragg v. Hughes, Tex.Civ.App., 53 S.W.2d 151, par. 4; Missouri, K. & T. Ry. Co. v. Smith, Tex.Civ.App., 101 S.W. 453, par. 2; City of San Antonio v. Zogheib, Tex.Civ.App., 70 S.W.2d 333, par. 7; Lancaster v. Texas & N. O. R. Co., Tex.Civ.App., 72 S.W.2d 326, par. 2; Texas & N. O. R. Co. v. McGinnis, Tex.Com.App., 109 S.W.2d 160, par. 11; Id., Tex.Civ.App., 81 S.W.2d 200, pars. 8 to 10, inclusive; Hubb Diggs Co. v. Bell, 116 Tex. 427, 293 S.W. 808, par. 4; Galveston, H. & S. A. Ry. Co. v. Brewer, Tex.Civ.App., 4 S.W.2d 320, par. 15; City of Waco v. Ballard, Tex.Civ.App., 277 S.W. 441, 442, par. 4, and authorities there cited; Willits & Patterson v. Houston Packing Co., Tex.Civ.App., 268 S.W. 237, par. 6; Republic Production Co. v. Collins, Tex.Civ.App., 41 S.W.2d 100, pars. 3 and 4. All, or nearly all, of the cases cited by appellant involved matters presented to the jury for consideration either by evidence or by argument and which were reasonably calculated to excite sympathy or arouse prejudice, elements wholly lacking in the incident here under consideration.

The judgment of the trial court is affirmed.