## B. RENN AND OTHERS v. E. SAMOS AND OTHERS.

1. As a general rule, all written documents, in order to be proved, must be produced in court, together with the witnesses to identify them, that the court and jury may by inspection be assured of the existence and genuineness of the instrument ; and the proof of the identity should be first made, before any other evidence in relation to the instrument is admitted, except in cases where the law has expressly dispensed with the identification of instruments.

2. When a written instrument is to be proved by depositions, the usual and recognized method of identifying it is by the deponent attaching it to his answer, marking and describing it ; or for the officer taking the deposition to certify that the attached instrument is the identical one presented to the deponent, and about which he testified.

3. If no identification be so made that the court and jury may know the precise instrument to which the testimony relates, the instrument cannot be legitimately before the court or jury.

4. In a trial directly upon the probate of a will, whether in a court of probate or upon appeal, the burden of proof is upon the executor or those who set up the will.

5. But when a will has been established and probated, and an original suit has been instituted in the district court to set it aside, for want of capacity in the testator, or for fraud, then the relative position of the parties is changed, and the party alleging the incapacity or fraud is put upon the proof of his allegations.

6. Though a testator of sound and disposing memory may, under our present laws, devise his entire estate to strangers ; yet all authorities agree that such a bequest is a circumstance which should arouse the suspicion and the strict scrutiny of the courts, and especially so when, as in the present case, there was no apparent cause for the disherison of the decedent's relatives.

7. That the will is in the handwriting of one of the principal legatees is another circumstance which casts suspicion on the instrument in the present case, and which calls for explanatory proof. (Vickery v. Hobbs, 21 Texas, 574, cited with approval.)

8. And when, as in the present case, there is a concurrence of two such circumstances as these, viz., that the will was written by a principal legatee, and that the estate was devised to strangers without apparent

cause, then the suspicions against the validity of the will are so in-
creased as to require undoubted proof of the testator's volition, capac-
ity, and knowledge of. the contents of the instrument, and also an ex-
planation by proof why he made such a disposition of his estate, and
why the legatee was called upon to write. the will.

9. When a party has voluntarily admitted a debt or confessed a crime, that
admission should be taken to be true, regardless of contradictory state-
ments made by the same party at a different time, unless he proves that
the admissions or confessions were made under a mistake, or were abso-
lutely untrue.

10. Admissions by a legatee that the will was procured by fraud or undue
influence will estop his representatives, after his death, from claiming
any benefit under the will. Whether the rights of other legatees will
be affected by such admissions depends upon the proof respecting their
complicity or non-complicity in the alleged fraud or undue influence;

APPEAL from Anderson.    Tried below before the Hon. Samuel
L. Earle.

Conrad Renn, a native of Germany, died at Rusk, in Cherokee
county, on the twenty-fourth of December, 1864.    On the seven-
teenth of the same month. he executed his last will and testament,
attested by three subscribing witnesses.    He had no immediate
family, but left brothers and one or more sisters, residents of Ger-
many or elsewhere.    By the alleged will ·he bequeathed various
large sums of Confederate money to the indigent families and the
Masonic Lodge of· Cherokee county, and then gave to his friend
and partner, E. Samos, his entire interest. in their drug store in
Rusk, together with the building in which the business was con-
ducted, and also another house and lot; and to his friend and
former partner, L. Veith, he gave his store house and lot in Rusk;
and to his friend and old acquaintance, W. P. Brittain, he gave a
residence and block of ground in the same. place.    Trivial be-
quests were made to other persons, and among them were some of
his kindred.    These parties, Samos, Veith and Brittain, were
appointed executors, and by the codicil, executed three days after
the will, they were exonerated from bond and from accountability

to the probate court further than to have the will probated and recorded, and to file an inventory and appraisement.

The County Court of Cherokee county, at its February term, 1865, admitted the will and codicil to probate. The present suit was instituted by the heirs of Renn, the alleged testator, against Samos, Veith and Brittain, to contest the validity of the will. Two mistrials of the case were had in Cherokee county, the juries failing to agree; and the venue was then changed to Anderson county, where a trial was had in April, 1869, resulting in verdict and judgment for the defendants. The heirs bring up the case by appeal.

Samos died pending the litigation in the district courts, and his widow and executrix became a party in his stead. There was evidence of admissions made by him, some time before his death, that the will was procured by fraud and imposition upon the deceased Renn; that a different will was read to him than that to which his signature was obtained; that Renn expressed great solicitude that his estate should go to his relatives, and paid to Brittain five hundred dollars in gold on his promise that he would see, when the war should close, that the relatives of Renn should get the estate. Samos also stated, according to the evidence, that Renn had between ten and fifteen thousand dollars in gold, to which no reference was made in the alleged will, and which disappeared after his death.

There was quite a mass of testimony introduced on both sides. The medical fraternity, as usual in such cases, mustered in full force, and with the usual result of discordant diagnoses and conflicting conclusions. One unfortunate brother of the guild, who was a witness as to the mental condition and capacity of the decedent, was himself subjected by his brethren to an *ante mortem* mental dissection, in order to determine his own qualifications as a scientific witness.

As the opinion of this court indicates such features of the evi-

dence as it deals with, there is no occasion to undertake a recapitu-
lation of the voluminous testimony.

The briefs of the counsel are commensurate with the dimensions
of the record. They cannot be given in full, and it would be
doing injustice to their authors to mutilate them.

*Parsons & Jones,* for the appellants.

*M. Priest* and *Wm. Alexander,* for the appellees.

OGDEN, J.—This suit was brought to the district court, under
Article 1262, Paschal's, Digest, to contest the will of C. Renn, de-
ceased, for alleged fraud and undue influence in the conception and
execution of the same ; and on an examination of the record we dis-
cover an error in the trial below which is fatal to the judgment,
and will require a reversal of the same. On the trial the alleged
will of C. Renn was proven up by the depositions of the subscrib-
ing witnesses, who testify as to a certain paper purporting to be
the will of Renn, without, in any manner, conveying to the court
an identity of the paper about which they testify. As a general
rule, all written documents, in order to be proven, must be pro-
duced in court, together with the witnesses who are to identify and
prove the same, that the court and jury may by inspection be as-
sured of the existence and genuineness of the instrument to be
proven (Starkie Ev., 454); and proof of the identification should
in all cases be first made before the admission of any other testi-
mony in relation to a written instrument. And when the law does
not in express terms excuse or dispense with that identification, by
personal testimony, a written document cannot be legitimately re-
ceived by the court or considered by the jury.

When an instrument of writing is attempted to be proven up by
deposition, the usual and recognized practice of proving the iden-
tification is for the deponent to attach the instrument to his answer,
marking and describing the same ; or for the officer before whom

the deposition is taken to certify that it is the identical instrument presented to the witness, and about which he testified. (Greenl. Ev., 3 vol., p. 271; Redf. on Wills, 2 vol., p. 31; 9 Texas, 494, and 11 Texas, 380.) But if no identification is made, so that the court and jury may know the precise instrument about which the witness may have testified, no such instrument can be legitimately before the court or considered by the jury.

In the cause at bar the record shows that the only proof offered in the district court, to establish the paper purporting to be the will of Casper Renn was the depositions of Wiggins, Jackson, Rains, Wightman and McDougal, all of whom testify in relation to a certain paper which they say is the will and codicil of C. Renn; but their testimony is taken before the sitting of the court that tried the cause, and in a different county from that in which the cause was tried, and there is no evidence that the paper about which the witnesses testified is the same that was permitted by the court to go to the jury as the proven will and codicil of C. Renn. This paper was received by the court as sufficiently identified and proven as the will of Renn, notwithstanding the objections of counsel for appellants. We are therefore of the opinion that the court erred in overruling appellants' exceptions to the reading to the jury the fourth interrogatory propounded to Wiggins, Jackson, Rains, Wightman and McDougal, and their answers thereto, and indeed in permitting any portion of their depositions to go to the jury, until the will had been produced in court and identified; and for these errors the judgment must be reversed and the cause remanded.

And as this cause will again be tried in the district court, we deem it proper, in order that the same may be finally and equitably determined in that court, to notice some of the many questions which arose on the trial below. The first question raised was as to the relative position the parties should occupy, whether as plaintiffs or defendants. The authorities have not been entirely uniform

in relation to this question, but it is believed now to be a well settled principle of practice that "the formal burden of proof in trials directly upon the probate of the will, whether in the court of probate or upon appeal, is upon the executor or those who set up the will. He or they are therefore allowed to go forward in the proof and argument." (Redf. on Wills, 1 vol., p. 31; Greenl. Ev., 1 vol., pp. 73-7.) But when the will has been established and probated, and an original suit has been instituted in the district court to set it aside, on account of insanity or want of testamentary capacity, or for fraud, then the relative position of the parties is changed, and the party alleging the insanity or fraud, or a want of testamentary capacity, is put upon the proof of his allegations, (Redfield on Wills, part 1, pp. 31-3,) and therefore becomes the plaintiff.

On an examination of the whole testimony in this cause, we are at some loss to reconcile the verdict and judgment with the facts on legal principles. There are a series of suspicious circumstances hanging over nearly every fact proven in connection with the written instrument which is the foundation of this suit. In the first place, the testator, being a single man without a family of his own, bequeaths by far the greater portion of a very considerable estate to entire strangers, to the exclusion of brothers and sisters, or sister, without any cause whatever. It is true, that under our present laws a person with a sound and disposing memory may, by his last will and testament, dispose of his estate to strangers, to the exclusion of kin or relatives; yet all authorities agree that such a bequest is a circumstance which should arouse the suspicion and strict scrutiny of the court whose authority is invoked to execute the bequest, and more especially where the testator has, as in this case, excluded his relatives without any cause. The will by which this suspicious bequest was made, was in the handwriting of Brittain, one of the principal legatees. This of itself, independent of all other circumstances, should cast such a suspicion

upon the instrument as to require an explanation by proof. (1 Curtis, 637; Jarmon on Wills, 42; and Vickery v. Hobbs, 21 Texas, 574.) In the latter case, Justice Wheeler says: "Where, as in this case, a will is written by one who takes a benefit under it, that is a circumstance to excite stricter scrutiny, and require stricter proof, not only of volition and capacity, but that the testator knew the contents of the paper he was signing."

In the case at bar, we are constrained to say, that instead of requiring stricter proof than the law under ordinary circumstances would have demanded, the jury seem to have been satisfied with much less and more unsatisfactory proof of volition, capacity or knowledge on the part of the testator. These two facts, that the will was written by a principal legatee, and that the estate was devised to strangers, greatly increase the suspicion attached to each, and together they form such strong suspicions against the validity of the will as should require undoubted proof of volition and capacity, and that the testator knew the contents of the will, and further, a full explanation, by proof, why the testator devised his estate as he did, and also why the legatee was called upon to write the will which gave an estate to himself. The testimony of the subscribing witnesses, in detailing the facts which occurred on the execution of the will, had that testimony been properly before the court, wholly failed to prove any act of volition, and but little consciousness on the part of the testator; as he neither said nor did anything excepting in response to the interrogations or suggestions from one of the witnesses, and the responses were more suggestive of a want of volition and consciousness than anything else.

There are other circumstances of suspicion connected with this cause which need not now be noticed further than to say, that when there are so many circumstances of suspicion connected with the drafting and execution, the object and purpose of a will, it becomes the duty of the court to strictly scrutinize the whole matter; and if the case is to be finally determined by a jury, then

to charge the law in regard to every suspicion, and to see that those charges are regarded by the jury.   The charge of the court in this case, in relation to the admissions of one of the co-defendants, is in the main a correct enunciation of the law on that subject, but we cannot fully endorse that portion of the charge in relation to conflicting statements of the party making admissions. We think the true rule is, that where a party has voluntarily admitted a debt or confessed a crime, that admission should be taken as true, regardless of contradictory statements made by the same party at a different time, unless he proves that the admissions or confessions were made under a mistake, or that they were absolutely untrue.   (Starkie's Ev., page 52; Ray v. Bell, 24. Ill. R., 444.)   The admissions of Samos during his lifetime in regard to the fraud or undue influence in procuring the will of C. Renn, or the amount and character of property belonging to the estate, and not reported by the executors, should have been received by the court and jury as testimony to estop his representatives from claiming any benefit under the will, and uncontradicted, should have been held as evidence against the validity of the will itself; and the rights of the appellees under the will must be determined by the facts which go to connect Samos, Veith and Brittain in the fraud or undue influence, if any, in procuring the will, and which may have been confessed by Samos; and if Samos, Veith and Brittain combined or confederated together to procure by fraud or undue influence the execution of the will then they are all equally guilty and should be so held.   The judgment is reversed and the cause remanded.

Reversed and remanded.