## POLSER v. POLSER et al.

### No. 13445.

Court of Civil Appeals of Texas. Dallas.
March 3, 1944.

Rehearing Denied April 7, 1944.

John D. Reese, of McKinney, for appellant.

W. C. Dowdy, of McKinney, for appellees.

YOUNG, Justice.

This is a will contest between proponents thereof, surviving wife of D. F. Polser, deceased, and the children of his first marriage, on grounds of mental incapacity and undue influence. The instrument was admitted to probate in the County Court and on jury findings of mental incapacity in district court appeal, the order of probate was set aside and will declared invalid. Proponent's motion for new trial was overruled, due exceptions taken and appeal perfected.

D. F. (or Dave) Polser was around seventy-five years of age at the time of death, June 2, 1942. His will dated September 30, 1941, left all property (a farm and personalty) to his surviving wife, Maggie Polser; providing, in case she (the wife) predecease testator, that the realty should go to children of second marriage, personalty to be divided equally between all children; appellant being named independent executrix, without bond. There were five children (contestants) by the first marriage and four by the second. The real estate devised was testator's undivided one-half interest in 170 acres of good farm land, community property of the first marriage and homestead of testator and second wife at his death.

Appellant's complaint is, in substance, that the jury verdict was so against the great weight and preponderance of evidence as to be clearly wrong and manifestly unjust; further urging that contestants' evidence was of no probative force, and wholly insufficient as a predicate for setting aside the instrument in suit. In neither county nor district court trial was the issue of undue influence raised.

It is our burden therefore to examine and weigh all evidence assailed for the purpose of determining whether the record in question is sufficient to raise an issue of testator's mental incapacity and support a finding thereon. Chambers v. Winn, 137 Tex. 444, 154 S.W.2d 454. In such determination, it is our duty to reject all evidence favorable to appellant's contention and consider only that sustaining the verdict rendered. Breeding v. Naler, Tex.Civ.App., 120 S.W.2d 888.

Mr. Polser suffered two heavy strokes of paralysis, the first in December, 1940, and the next in March, 1942; his death following on June 2. Dr. Scott Wysong attended him at a McKinney hospital each time; also examining the patient at medical clinic in February, 1941. The first attack involved deceased's entire right side, brought on by cerebral hemorrhage, and Dr. Wysong testified that at February examination, he was still paralyzed and unable to talk; and although witness did not see testator during the time intervening March, 1942, that he never recovered from the initial stroke; the doctor stating on cross-examination:

"Q. The next time you saw him was in 1942 when the old gentleman was completely out at that time with another attack? A. Completely, yes, sir.

"Q. That wouldn't mean that he didn't know what he was doing in the meantime,

during those eleven months? A. Not necessarily, no, sir.

"Q. He could have recovered enough from that attack to regain his mentality, regain his speech, regain control of his muscles and walk around and talk? A. I don't believe after a severe stroke he could ever regain complete control."

At instance of contestants, a number of near neighbors and friends testified that a change came over testator after his first illness, both mentally and physically; relating incidents where, from the conversations and demeanor of Mr. Polser, they concluded he was of unsound mind; of his talking at random and with difficulty, and of a "wild look out of eyes"; Mr. Byrum stating that in November, 1941, at the latter's gin, the old gentleman did not recognize him, could hardly talk or be understood; of having no control over mouth muscles and was "nervous and trembling all over." Mr. Marion, living on adjoining farm, also told of a gin transaction in fall of 1941 when he tried to prepare some forms for Mr. Polser who required assistance in answering questions; of his signing an illegible check; deceased not indicating that he recognized witness. Messrs. Johnson and Clary, bankers of McKinney and Prosper, each testified to physical and mental deterioration of deceased along in June or July, 1941, on account of which they refused to make loans; concluding that he was unable to transact business and was of unsound mind. Mr. Johnson identified signatures of D. F. Polser made in 1937 and October, 1940, and comparing same with signature on the will, couldn't see much similarity; that considering the writing on the will alone, "wouldn't know what it was." Mrs. Ray Polser, wife of a son by the first marriage, told of picking cotton on the Polser farm about the middle of September, 1941, and of making a remark to testator about it; he answering "No, we are not picking cotton; we don't even raise cotton"; that along about the 27th of September, 1941, she met testator in front of the McKinney Dry Goods Store and said to him, "Dad, what do you want? and he said 'I am lost and I want to go somewhere * * *' so I just turned him around and started him back" (to his car).

It was shown that testator's attitude toward his older children was at all times friendly and that they stayed at home and helped work the farm until each was grown.

Manifestly, the above outline of contestants' proof, without more, is sufficient in weight and quantum to raise an issue of mental incapacity; appellant, on the other hand, earnestly arguing the insufficiency of all testimony to overcome her prima facie case. With this contention, we disagree; nor does the record as a whole conclusively indicate testamentary ability on the date of the will. Krumb v. Porter, Tex.Civ.App., 152 S.W.2d 495, writ refused. The resulting conflict of fact was for the jury's determination, and a judgment in favor of contestants must be affirmed where the record discloses evidence pro and con upon the controlling issue of mental capacity. In lieu of further discussion, the following excerpt from Lord v. Hatcher, Tex.Civ.App., 83 S.W. 2d 758, 760, is appropriate and in point: "No one of the witnesses for the contestees was shown to have been actually well acquainted with Mary Jane Lord at or up to the time this paper was so drawn for and executed by her through making her mark in place of being able to sign her name, and who had had a really fair opportunity to pass upon her mental condition at that time as compared with it in previous years; while upon the adverse side those presented by the contestants were the very few who had sustained the closest relations and enjoyed the most intimate acquaintance with her over those periods of time, thereby placing them in much the better position to judge as to her capacity to make a will at the very time she undertook to do so." See also, 44 T.J., Wills, Sec. 34.

The judgment appealed from is therefore approved, and it is so ordered.

Affirmed.