Eugene J. TROUPPY, Appellant,

v.

E. A. DE BUS, Appellee.

No. 15885.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 28, 1958.

Rehearing Denied March 28, 1958.

McDonald & Anderson, and Geo. W. Anderson, Wichita Falls, for appellant.

Allen & Cherry, and Kenneth Johnson, Witchita Falls, for appellee.

MASSEY, Chief Justice.

A deceased had been the wife of E. A. De Bus. She was the mother of Eugene J. Trouppy. Upon her death the former filed a will purporting to be the last will and testament of the deceased. Trouppy contested the application for probate. The will was admitted to probate and letters ordered pursuant to a judgment of the County Court of Wichita County, Texas.

The contestant appealed to the District Court. The case was tried before a jury and judgment was entered upon the verdict returned admitting the will to probate and finding against the contestant as to all relief sought by him. From this judgment the contestant has appealed.

Judgment affirmed.

■ Before referring to the facts and issues between the parties, and upon which points of error have been predicated on the appeal by contestant, we find it necessary to determine a matter of jurisdiction raised by contestant's first point.

Contestant objected and excepted to the charge of the court on various grounds. Thereafter, it was submitted to the jury. Inadvertently, the trial judge failed to sign the charge as provided by Texas Rules of Civil Procedure, rule 272. Contestant has challenged such failure for the first time

in his brief filed in this court. He insists that the judge's failure to sign the charge was fundamental error which the authorities permit to be presented without prior assignment.

■ If fundamental error actually was presented by the foregoing, we could of course consider it. But we do not deem the situation to constitute fundamental error. Since the adoption of the Rules of Civil Procedure the concept of fundamental error has become much narrower than was the case prior to their adoption. Of course, an error which directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State, is fundamental. Likewise, when the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter, the error will also be regarded as fundamental. See McCauley v. Consolidated Underwriters, Tex.1957, 304 S.W.2d 265. Neither character of error is made to appear by the complaint presented here. There being no fundamental error involved, the point is overruled.

There is additional reason why the error, if such it was, would not warrant reversal. The appellant predicates his argument upon certain language to be found in 24-A Tex. Jur., p. 615, "Instructions", sec. 57, "Signing—Certifying", where it is stated: "In civil cases the charge must be signed by the judge * * *." In the text superseded (24 Tex.Jur., p. 464, sec. 13) the word "shall" was used rather than "must". But as to the material parts of T.R.C.P. 272 as compared with material parts of Art. 2185, Vernon's Ann.Civ.St., in which the Rule has its source, there is no change. In cases decided at a time when the pertinent part of the controlling Article read "The charge shall be in writing, signed by the judge," decisions were to the effect that failure to sign the charge did not constitute reversible error. Parker v. Chancellor, 1890, 78 Tex. 524, 15 S.W. 157; McDonald v. Axtell, Tex.Civ.App., Dallas, 1919, 218 S.W. 563, error refused.

By a variety of points of error the contestant contends that the jury findings to the effect that the proponent of the will acted in good faith in offering the will for probate, that the testatrix executed the same, and that she had testamentary capacity were not supported by the evidence or even raised by the evidence,—and if raised and supported the answers returned were so contrary to the overwhelming weight of all the evidence, both for and against the questions submitted, as to be clearly wrong and manifestly unjust. Contestant contends that by reason thereof the trial court erred in refusing to instruct the jury to return a verdict in his favor, in refusing to disregard the answers returned to the issues submitted, and in refusing to enter judgment non obstante veredicto.

By other points the contestant contends that the failure and refusal of the jury to find in his favor upon his issue inquiring whether the testatrix was acting under undue influence of the proponent at the time she executed the will in question was contrary to the overwhelming evidence.

Though there is a voluminous record, we do not need to consider very much of it. The greater part of the record relates to a history of the family and of relationships within the family of the testatrix and her husband, including the times when the contestant was a constituent part thereof as a small boy. The record also covers the relations existent at varying times between testatrix and proponent, with testatrix' granddaughter by contestant's first wife, and with said first wife, and also with the grandson by contestant's second wife. The ultimate questions to be determined relate to the date of April 16, 1954, *on which date the will in question was executed.*

All the evidence of occurrences at other times, about the state and condition of the relationship between testatrix and others, and also the evidence relative to the mental and physical state of the testatrix at times

other than upon the date of April 16, 1954 (and the particular time on that day when the will was purportedly executed) while persuasive and no doubt properly admitted as a background for the subject matter thus brought into proper focus for purposes of the picture, would be material in our determination only in the event it was thereby demonstrated that the testatrix did not have testamentary capacity on April 16, 1954, or did not exercise it in the execution of her will; and/or in the alternative that she would not have executed the will in the form and with the context therein to be observed but for the exercise of undue influence which affected her action at the time.

Without detailing the proofs in the record, we will state that we find sharp and clearly defined issues to have therein been made upon the mental capability and testamentary capacity of the deceased at the time of the purported execution. Actually, the only matter in the will in question differing from matter which all parties seem to agree would have been eminently satisfactory is the deletion of provision in former wills which would have left the property to the contestant and his two children upon the death of both the proponent husband and the testatrix. The will in question left everything to proponent with no mention whatever of contestant or his children.

About three years prior to the date of the will the testatrix had suffered a stroke which left her paralyzed and unable to control her bowels or her left arm or leg, and with a modified paralysis and extreme weakness in all parts of her body. She could move her right leg slightly and her head slightly and the only use she had of her right hand was to move it with difficulty from one spot to another or to hold light objects for a short period. She could say only a few words or simple phrases. She could eat only finely ground foods and take liquid or semi-liquid substances. Nevertheless, she could carry on modified conversations and did so, the necessities thereof involving in the main a response by her to questions asked.

Preliminary arrangements for the execution of testatrix' will was made at the instance of proponent who called upon Mr. Kenneth Johnson, an attorney, who drew the will in the usual form in his office. Mr. Johnson got in touch with Dr. W. L. Parker, physician in attendance upon the testatrix, for the purpose of obtaining the doctor's opinion about whether testatrix had testamentary capacity. It was thereafter that the doctor, with some prior thought upon the matter, expressed his opinion that testatrix was mentally capable of making her will. After the doctor had done so, Mr. Johnson arranged a time at which he would present himself at the testatrix' home for the purpose of accomplishing the execution of the will. The doctor's presence was arranged for and he attended. The practical nurse who cared for testatrix was present, and at proponent's request she had caused a Mrs. Skipworth to be present. Mrs. Skipworth had been in attendance upon the testatrix at previous times, and still occasionally helped out with her nursing.

At the meeting, the condition of the testatrix was such that her interrogation was necessarily, by questions, put to her after the will was read to her, with answers elicited to the effect that the recitations of the will expressed her own will and desires. Thereupon, the will was placed in her lap (as she was propped up on the hospital bed) and a pen placed in her right hand. She made some unintelligible scratches upon the line for her signature, whereupon Dr. Parker took hold of her hand and made a bold "X" as her mark.

Then Mrs. Chambless and Mrs. Skipworth, along with Mr. Johnson and Dr. Parker, signed as witnesses to testatrix' signature, as well as in the character of witnesses subscribing to the customary language for attesting witnesses.

A little less than two years after the aforesaid transaction the testatrix died, following which the proponent offered the will for probate, followed by the litigation.

Upon the trial from which this appeal was taken, attorney Johnson and Mrs. Chambless, of the persons present at time the will was executed, were witnesses for proponent. Dr. Parker and Mrs. Skipworth testified for the contestant. It is noted from the record that there had been one previous trial in the District Court and of course the first trial in the county court, at which earlier testimony from these witnesses had been introduced. The record of such proved quite useful to the proponent on the final trial. The testimony for the proponent upon the matter was rather positive in character in support of the execution of the will by testatrix and in proof of her mental capacity and understanding of the tenor and effect of the instrument signed. Dr. Parker, admitting that on the day of the execution of the will he was of the opinion that the testatrix did know and appreciate the consequence of her act and the purport and intent thereof, testified that within a few weeks he changed his mind and decided that he had been wrong in such original opinion. On cross-examination of Dr. Parker and Mrs. Skipworth, their testimony given at prior hearings concerning the nature of the questions asked and answers returned by testatrix incident to the execution of the will was brought out. Such tended to support the contentions of proponent. Obviously it was very damaging to the strength of differing testimony given upon that trial. The balance of the testimony upon testatrix' act and capacity was from persons other than those present at time of the execution of the will, relating generally to her mental condition and ability to speak and answer and understand. In this, the contestant tendered the greater number of witnesses, but that of Aaron Franks, an elderly colored man, offered by proponent, was most destructive to contestant's position.

We have concluded that there was certainly sufficient evidence of probative force to support the answers returned by the jury, and have furthermore concluded that there is no merit to the contestant's contention that such answers were so contrary to the greater weight and preponderance of the evidence as to be manifestly wrong and unjust. The trial court did not err in submitting the issues to the jury, nor in rejecting the contestant's motions directed to obtaining instruction in his behalf. Judgment was properly entered on the verdict, and contestant's motion for judgment non obstante veredicto was properly denied.

In proponent's reply to the contestant's pleadings he alleged that "he never used any influence on his wife and that she was capable and did make up her own mind as to what she wanted to do and * * * would further show the Court that he, the said E. A. De Bus, never administered any medicines or drugs to his wife but left this matter in more skilled hands, to-wit, the nurses and doctor." Contestant excepted to this pleading and his exception was overruled. Complaint is made thereof by a point on appeal. The point is overruled.

While it is true that the "Dead Man's" Statute, Art. 3716, Vernon's Ann.Civ.St., prevents beneficiaries from testifying that they did not in any way influence the testator in the execution of a will, yet a proponent of a will is free to plead his defenses to allegations of undue influence when advanced by a contestant thereof. So long as the pleadings do not amount to a device by which information is brought before the jury which they could not have by way of testimony admissible upon the trial they are proper. The authority upon which the contestant relies, McDonald's Estate v. McDonald, Tex.Civ.App., Amarillo, 1912, 150 S.W. 593, is not in point. That part of the holding in such case which relates to a special exception which should have been sustained was predicated upon allegations

which should have been subject to exception on the ground that a legal standard of mental capacity was thereby advanced which was not proper nor sufficient.

The contestant requested the trial court to give the following instructions in the charge:

"'You are instructed that every Last Will and Testament shall be in writing, and signed by the Testatrix in person or by another person for her, by her direction and in her presence, and shall be attested by two or more credible witnesses above the age of fourteen years who shall subscribe their names thereto in their own handwriting in the presence of the Testatrix.'"

"'You are instructed that there is no presumption in law that the maker of a Will is of sound mind, as that word is defined to you herein, at the time it is alleged that she has executed a Will.'"

The trial court gave in its charge an instruction reading as follows:

"You are instructed that every person who has attained the age of nineteen years or who is or has been lawfully married, being of sound mind, shall have the right and power to make his last will and testament *under the rules and limitations prescribed by law.*" (Emphasis supplied.)

■ One of contestant's points is predicated upon the contention that since the court had given an instruction ending in the words we have emphasized, it should have given the first of its requested additional instructions, for otherwise the jury would have been left with no rule and guide as to what was meant by the instruction given. We believe that the trial court properly refused to give the additional instruction. Had it been given, the jury would have received no aid material to the disposition it was to make of the issues submitted. The "rules and limitations" in question would be matter for the court and not the jury, at least in this case, and no error could be injected by words and instructions in the charge to which the jury would have no need or occasion to be bound to adhere to.

■■ Relative to the second of the contestant's requested instructions, it is to be remembered that the contest of the will antedated any order entered directing its admission to probate, and hence the burden of proof as to the testatrix' mental capacity remained at all times and through the last trial upon the proponent of the will. 44 Tex.Jur., p. 571, "Wills", sec. 31, "Burden of Proof as to Mental Ability or Capacity." Though the burden of proof is cast upon the proponent, actually the matter constitutes a defense of the contestant. The real defense is want of testamentary capacity. Unless the presence of testamentary capacity is made to prima facie appear, the proponent is not entitled to have the will admitted to probate. Of course, the sanity of a testator or testatrix is an element essential to testamentary capacity, though not as encompassing as the term, and an allegation of insanity amounts to a denial of testamentary capacity. Rodgers v. Fleming, Tex.Com.App.1928, 3 S.W.2d 77.

The trial court defined "sound mind" in the present instance as meaning that the person making the will must have "testamentary capacity", and then proceeded to instruct the jury as to the elements of testamentary capacity, in which instruction the element of sanity was fully embraced. In the special issue submitting the question of testamentary capacity, the burden was properly placed upon the proponent to obtain a favorable finding by the preponderance of the evidence. The jury found that the testatrix had testamentary capacity at the time of the execution of the will, necessarily also finding that she was of sound mind at the time in view of the instruction of the court.

The contestant cites the case of Hickman v. Hickman, Tev.Civ.App., Eastland, 1951, 244 S.W.2d 681, writ refused, n. r. e., as an

example of the quandary of a jury upon the matter of whether it should consider a testator or testatrix of sound mind until proven unsound, or to presume unsoundness of mind until proven sound. The contestant then argues that reversible error appears in view of the court's refusal to give the second of the requested instructions. He bolsters this by referring to an instance during the course of his attorney's argument to the jury as follows: "Here is something else I want you to keep in mind; you and I and the rest of these folks around here, we are all presumed to be sane. There is no such presumption in favor of Mrs. DeBus. Where is the proof she was of sound mind." Counsel for proponent objected to the argument and moved that the jury be instructed not to consider it. The court sustained the objection and instructed the jury as requested. Though no point of error is predicated upon this occurrence, contestant points to it in emphasis of his contention that error did result on account of the refusal of the requested instruction in the charge. We are confined to consideration of the question as to whether or not the instruction which was given was sufficient to charge the jury so that it would actually test the evidence for a preponderance before it found that testatrix had testamentary capacity, including soundness of mind. In so doing, we consider it important to check the language of the issue to which the instruction related. It read: "Do you find from a preponderance of the evidence that at the time Marie Louise DeBus executed the alleged will dated April 16, 1954, if she did execute it, that she, the said Marie Louise DeBus, had testamentary capacity, as that term is hereinabove defined to you?" When this is done we do not see how contestant could have suffered any injury by the failure to obtain his specially requested instruction. The intent and purpose of the new Rules of Civil Procedure adopted in 1941, and as further amended, was to promote the speedy disposition of causes and to simplify the special issue practice and eliminate the submission of one

ground of recovery or defense in a multitude of different ways depending upon the ingenuity of trial counsel to submit them. The same reasoning will apply to the giving of explanatory instructions as to issues. T.R.C.P. 1 and 279: Yellow Cab and Baggage Company v. Green, 1955, 154 Tex. 330, 277 S.W.2d 92.

■ Three of contestant's points relate to the trial court's refusal to strike testimony of Kenneth Johnson and Mrs. Chambless, and in refusing to grant a mistrial because of the proponent's testifying as to transactions, or parts thereof, with the deceased in disobedience of the court's instructions. The testimony of Mr. Johnson was related to the reasons why he had issued subpoenaes for certain witnesses of the contestant, namely, Dr. Parker and Helen Trouppy. The explanation was that as to the former he wanted to be certain that the doctor was present for cross-examination purposes other than and in addition to that to be found in his deposition, and that as to the latter it was so that she would be compelled to remain outside the courtroom under the rule and so that she could not listen to testimony and then report to the other witnesses waiting to testify, as he had reason to believe had been done upon former trials. The testimony of Mrs. Chambless was a conclusion on her part that the testatrix had signed her name of her own free will. Proponent's testimony, in practically every instance as to which the court sustained objection interposed and when requested instructed the jury not to consider same, was referred to in the brief of contestant. Examples of such were: (1) "* * * when my wife found that out—* * * I had some static in the family." (2) "Q. Did you and she always discuss your business and your property? A. We certainly did." (3) "A. I had to. I was taking care of my wife." (4) "Q. And your wife, on May the 21st, 1954 signed the instrument, didn't she? * * * A. That's right. She sure did." Other instances were referred to where propon-

ent's counsel asked him questions, answers to which were never elicited in view of objections interposed.

These points must be overruled perforce T.R.C.P. 434. In so ruling, we of course proceed on the premise that error is presented, but that it was not such as was reasonably calculated to cause and probably did cause the rendition of an erroneous judgment. We do not pass upon the question of whether error actually is presented in any of the instances, such not being necessary to our determination.

By three points contestant contends that Kenneth Johnson, attorney for the proponent, violated the law governing the State Bar of Texas and the Rules of the College of Trial Lawyers in that he not only prepared the testatrix' will and participated in the execution of same, but that he participated in the trial as counsel for proponent knowing that he would be a witness for proponent, and testified as a witness,—after which he argued proponent's case to the jury, in the course of which he argued upon the matter of the credibility of his own testimony, made statements of fact not testified to by any party, and made statements tending to bring opposing counsel into disfavor with the jury as having been guilty of conduct unbecoming attorneys, all to the prejudice of contestant and causing the jury to return a verdict other than that which it would in all reasonable probability have returned but for the errors complained of.

 In respect to the propriety of Mr. Johnson in acting as a witness in the case and also as counsel introducing testimony and arguing before the jury, we are of the opinion that this court is not a proper place in which to lodge complaint. Contestant refers us to Vernon's Ann.Civ.St. Art. 320a–1, Rules of the State Bar of Texas, Art. XIII, "Canons of Ethics", sec. 16, "Appear-

ance of Member as Witness for His Client". Any discipline of members for violation of the Canons of Ethics is lodged within a body other than this court perforce Art. XII of the Rules. We therefore must overrule the complaint made in this court, as same relates to alleged impropriety of counsel in appearing as both attorney and witness and arguing his client's case before the jury.

 In other respects, it is to be noticed that no objections were taken to Mr. Johnson's argument at the time it was made, nor at the conclusion of his argument, and contestant did not request the court to instruct the jury in any way in relation to it. Instead, at some subsequent time he obtained an approval of a bill of exceptions and embodied complaint in his motion for new trial. Examination of the argument complained of brings us to the conclusions that (1) the facts of which contestant complains amounted to no more than legitimate inferences which counsel was entitled to make from the testimony introduced; (2) the argument contestant believes operated to bring his own attorneys into disfavor with the jury no more than such as was provoked by the argument of adversaries which cast doubt upon his credibility in view of opposing counsel's reference to his participation in an "unholy scene" at the execution of the will; and (3) his argument upon the matter of his own credibility no more than an incident provoked in his reply to the prior argument reflecting upon that very credibility. Error is not made to appear. If it could be said to appear, it was waived. If not waived, it is not shown to have amounted to error which was reasonably calculated to cause and probably did cause the return of a verdict other than that which would have been returned but for the error.

Judgment is affirmed.